And that leads us to our final case this morning, number 23, 1465, Love v. McDonough. Mr. Eiler, go ahead. Good morning, Your Honor. Attorney Ken Eiler appearing here on behalf of 1465 for Mr. Love with me at counsel's table is Attorney John Niles. We will, of course, be in this appeal getting into the merits of Mr. Love's appeal and why the Veterans Court erred in affirming the board's decision denying Mr. Love's entitlement to compensation for his prostate cancer at the correct sum as opposed to the reduced sum. As the Court is aware, obviously, he's been dealing with this condition for 20 years, as we briefly encapsulated, on the virtue of one examination that occurred in 2018. Essentially, his rating that had been in place for over a decade is reduced, and he's been without those benefits now since December of 2019 for over four years. And as we explained in our brief, basically, the first reason that the reduction by the agency was improper was based upon a misinterpretation of the note, in that that note, pursuant to the Secretary's authority under 38 U.S.C. 1155, the Secretary may not... The misinterpretation of the note issue implicates, when you say they misinterpreted the note, that gets us into the question of whether Foster was correctly decided, correct? Yes, Your Honor. Okay. Yes, correct. And whether the agency exceeded its authority under 1155 is a separate question. Yes. Okay. That's correct. Basically, you're saying we have those two questions to look at. Yes. Okay. Yes. And with the court's leave, I'll actually address the second issue first, which is not the may question, which is, may the Secretary promulgate a note that somehow exempts a condition from the Secretary's schedule from the protections found at Chapter 3 of Title 38 of the CFR? And I'll address the second question first, which is that it did not do so. The note doesn't exclude those protections, contrary to the Secretary's argument. Okay. But I think you've got a bit of a problem there, and this is a point that neither party has raised. My law clerk found in the rating schedule that there are ratings that specifically say that a discontinuance is subject to 3.344. For example, if you look, that's true of Rating 7713. And yet that language doesn't appear in the rating provision that we're dealing with here. Doesn't that sort of suggest that the rating provision that we're dealing with here is not subject to 3.344? We would submit no, Your Honor, if only because, as we explained in our brief, the silence of the note. Because there's still the question of what has to be done with respect to this exam. I don't think you're addressing the question. If some of the notes say this is subject to 3.344 and others don't, doesn't that suggest that the ones that don't were not intended to require analysis under 3.344? Our position is, Your Honor, no. That the fact that it wasn't specifically explicitly mentioned, that 3.344 applies, would not necessarily mean that the rule isn't still applicable here. Because essentially the position would be that, as the Secretary suggests, two theories as to how it is the case that somehow the diagnostic coding question is more specific or that it fully complies with 3.344. Well, if it fully complies, Your Honor, with 3.344. I'm sorry, I don't think you really, you haven't addressed my concern that if some provisions have the reference and others don't, doesn't that suggest that the ones that don't, including this one, it's deliberate? It would suggest it, Your Honor, but we would simply argue that while that may be suggestive, right, that 3.344 does not apply, we would maintain that that's still not the case for the purposes of our argument, that it does apply. Because we submit that the Secretary's argument that it somehow is more specific and complies with 3.344 is mistaken as to an exam's adequacy. Because if it somehow is more specific and it somehow encompasses 3.344, then how is it that we're here? Why are we here? Because the only issue, of course, that is before this Court, and the only issue that Mr. Love raised before the Veterans Court, was to the adequacy of his exam. And the Board said, hey, you don't get that. This is just simply a mechanism. There's a temporal element here. And so when he said, look, that's wrong, and appealed that to the Veterans Court, the Veterans Court said, hey, the single-judge panel in Mr. Love's case said, well, yeah, I'm foreclosed under the Veterans Court's holding in Foster from addressing. So they didn't even consider it. The 75-28 exam, you're saying that that is inferior or not as satisfactory as an exam under 3.343 or 3.344? Correct, Your Honor. Yes, that was his argument. That was the argument that he wanted the Board to consider. But of course, we couldn't decide that. That's a fact issue. Well, but the reasons why the exam were inadequate, you're right, Your Honor, that would simply be the application of law of effects, which would be on this Court's scope. But the inability to even raise 3.344 is an issue of interpretation of the note. Because the Secretary, of course, is saying prostate cancer is somehow unique from every other condition that the Secretary rates pursuant to the Secretary's schedule. What's wrong with that? I mean, there might be different types of cancers, have different conditions with different implications, different periods of remission, recurrences. And here, one of the things that struck me was in the factual part of it that, and correct me if I'm wrong, but Mr. Love had this rating, then it was taken away, then it came back again, and then it was eventually taken away. So, I mean, it's on the face of it. I grant we can't make a factual determination, but that would suggest a careful pinpointing examination as to the progress of his condition. Well, one of the Secretary's arguments, Your Honor, sort of goes to this, which is to say, well, 3.344, this Court should give full effect to the last two sentences of 3.344C. But the point being is, as we explained in our reply brief to the Secretary, the Board didn't make any factual findings to that point because it didn't even consider the operation of the adequacy of the exam in the first place. So, essentially, the Secretary's position is not just Mr. Love and his prostate cancer, but any veteran with any type of prostate cancer condition doesn't have the protections afforded to them under 3.344. The basic argument is that that's appropriate because the rating provision here contemplates that the 100% rating is a temporary rating, and that when there is treatment, the whole thing will be reevaluated. Correct, Your Honor. I guess the issue, our position would be, because there's under just the language of the note in the diagnostic code, right, there's really two elements. There's the temporal element that the Veterans Court focused on in Foster, right, and then there's the examination element. So, for the examination element, though, so if those two conditions are met, ostensibly, Your Honor, the Secretary's position would be, even though you or I don't have the necessary medical qualifications to conduct an exam of a veteran's prostate cancer condition, the Secretary says, hey, if Attorney Ken Iler did your prostate cancer exam, I guess you just drew the short straw because there's been an exam. I don't understand where this is going. Well, I'm just saying because it goes to the adequacy issue, Your Honor. Why on its face, Mr. Iler, is what's contemplated in 7528, why on its face is there any inadequacy there, inherent inadequacy? Well, because there are several protections, Your Honor, afforded under 3.344. No, no, I'm talking about why on its face is there an inadequacy, an inherent inadequacy in 7528, which is what you seem to be suggesting. Well, what we, respectfully, Your Honor, I think what we argued in our brief, right, is that it's silent as to the protections of 3.344. And obviously, as Your Honor pointed out, say, look, there are other diagnostic codes. When the Veterans Administration talks about giving an exam, they're not talking about giving a medical exam by a lawyer. So I don't quite understand what your point is. But the adequacy of medical exams, Your Honor, is something that the Secretary also wants to ensure in a separate part of the CFR. It's just simply that the exam be adequate. Since Veterans are relying on this income and that there is substantial improvement shown, as opposed to, as we pointed to, there was some improvement shown in Mr. Love's condition. So each of those, there are various protections. It's not just the competency of the examiner, that a competent examiner would be the one to make the determination. I understand, Your Honor. You're saying that the exam that's provided in the rating schedule is not necessarily as thorough as the one required by 3.344. I understand that. Yes, Your Honor. So I would just briefly then turn to the first issue, having discussed that it does not exclude 3.344. Our first argument being that the scope of USC 1155 is finite. And essentially it's limited to the Secretary adopting and applying, on the one hand, a disability's symptoms, with, on the other hand, the average resultant decrease that they cause in civilian earning capacity. You're saying even if 7528 stands alone, it was improper for the Secretary to promulgate that? Right, because essentially 1155... How can we review that? Isn't that something as to the substance of the rating schedule? No, Your Honor, because... 7252B? No, Your Honor. We argue in our brief that this isn't an issue, and the Secretary characterized this in the Secretary's brief, as it doesn't conflict, right? That the diagnostic code doesn't conflict. But rather, the issue is one of that it exceeds 1155's scope. Because we point to the example that it would be improper for the Secretary to say, okay, within the schedule, you cannot rate conditions that are secondary. Because 3.310 requires... Excuse me, Your Honor, I believe that's the correct regulation. Essentially, conditions that are secondary, residual, also have to be rated. So if the Secretary said, no, you just rate this condition, you can't rate this other condition, that would be an improper diagnostic code, in excess of the authority to say you just have to focus on what's the impact, right, and what is the resultant rate. But if the Secretary exceeds his or her authority, the Secretary is acting contrary to 1155, right? Correct. In excess of, and then thus, you have an unhinged executive, Your Honor. The Secretary could err in two ways. One, do something wrong, or go beyond his or her authority, right? And you're saying the latter happened here. Correct. Why? Because of the Secretary's crafting a diagnostic code unique to prostate cancer that basically says, this condition, it doesn't matter if a veteran has an exam by an adequate, competent examiner. If they've had the condition for more than five years. I just don't see that it says that. You can have an exam by an examiner who's not competent? It doesn't say that. But that's Mr. Love's argument, Your Honor. That was his argument to the Board. That's what happened to me. Had I had a competent exam, because I've had many exams in the 20 years that I've had my prostate cancer. That's a fact question. I mean, you know, he's entitled to a competent exam. But that's not before us. And the provision on its face doesn't say you're not entitled to a competent exam. Well, the 3.344 does. And that's our argument, Your Honor. Which is, that's the protection that 3.344 gives that the Veterans Court says does not apply to this diagnostic code. Your Honor, I see that, unless the Court has any additional questions, I would reserve the balance of my time. Give me two minutes. Thank you. Okay. Is it, is that correct? BZAC, Your Honor. BZAC, okay. Ms. BZAC, let me ask you, is it your, before you launch into what you were going to say, just to pick up the last point we were discussing with Mr. Iler. On this question, he contends that the VA exceeded its authority in 1155 in promulgating 7528, correct? I believe that's true, Your Honor, yes. That's, as we understand it, I think that's correct. That's what he says. But, and you say, and there's a footnote in your brief, that a good argument can be made for the proposition. We can't review that. Yes, Your Honor. Because of Warner and Wingard and the language of 7252B. So do you stand by that position? Yes, Your Honor. So to the extent that Mr. Love's argument is that the diagnostic code and or its note was improperly promulgated, that would be an argument that speaks to the content of that rating schedule. And 38 U.S.C. 7252B specifically precludes the Veterans Court from reviewing the content of the rating schedule, and thereby that would also be an improper review of a direct appeal of that issue in this court. So if they can't review it, we can't review it, you say? Yes, Your Honor. Not in the context of this case. We have to be 502. Yes, Your Honor, exactly. I think to the extent that the argument is that there is something wrong with that rating code, and I think the illustration of that is the effect of that argument would presumably be striking or modifying that code in some way. That has to be done through a 502 petition. Now one other question. We haven't, when Foster was decided, this is the second point on appeal. When Foster was decided, it resolved the 7528 issue, but then the rest of the case was sent back because of the determination that the board had aired with respect to residuals, I think. Yes, Your Honor. And I assume that Foster is still somewhere in the process because it hasn't come up here, as far as I know. Yes, Your Honor. So we're going to have to, I would think in this case, say Foster was right or wrong, correct? I believe so, Your Honor. Just on the second point. Yes, at least in part. Foster has not come up here yet. It's still at the VA. I looked up whether or not Foster had made it up here. I did not follow up on where it may be in the lower process, so I assume it is still somewhere in the process of the residual determination being re-evaluated. But yes, no, Foster has not come up to this court yet, and this case is effectively reliant on the Foster decision, at least parts of it. To the merits, unless the court has any further questions on the 1135 authority question, I'll move on to how 38 CFR 3.344 applies or does not in this case. Primarily, I'd like to set the context of this particular rating for the court just a bit. The prostate cancer rating, like many cancers' ratings that are found in the schedule, is essentially a binary rating. It's a 100% rating. If there is an active cancer, it is a 100% rating. When cancer goes into remission, that rating ends. I did not look up every single one, but all of the cancers I found had something similar, where there is a 100% rating. There is a note that describes the process by which that rating ends and how residuals are to be rated once the cancer is in remission. Those types of ratings, as the Veterans Court noted in Foster, and in- I don't think that's actually quite true, because the rating I was referring to earlier is for leukemia, and the rating says it is subject to 3.344. Yes, Your Honor, and I wasn't about to say that there is some overarching regulation related to cancers in particular, but I think the recognition is that the terms of 3.344 are really intended to speak to decisions to lower a particular rating based on severity, based on quality of life, based on employability. That is simply not a question that comes into play when you're talking about the specific 75-28 prostate cancer rating. There is a determination that needs to be made whether the cancer is active, whether the cancer is in remission, and that is the basis for the discontinuation of the rating. The note specifically lays out all of the processes that are required for that. It provides a six-month window after treatment. This is a recognition on the part of VA that this is a treatable, in many cases, disease, and the six months is based on VA's learned experience, the medical and scientific knowledge of how treatment goes, about the period in which recovery is commonly seen, and that rating reflects those understandings. Then once there is that finding remission, it directs the rater to look at residuals, which fall under a different diagnostic code for follow-up ratings. All of this is to say that we believe that because of the specific procedures that are laid out in the rating, that code applies the procedures specifically that are more generally laid out in 3.344 to this particular disease. I will touch briefly on, unless the court has questions about that particular argument, the language in 3.344C. I don't think the court needs to reach this point, but there was a question certainly left over in the Hanser case about whether... It wasn't discussed in the briefing below, right? I think it was discussed in Foster. Sorry, it wasn't discussed in Foster. Sorry, I missed the question. The Hauser issue, if we call it that, was not briefed before the Veterans Court. No, it was not. Perhaps, and I said the court doesn't need to reach that. Frankly, I think I can move on. I don't have too much more to say to the court, and unless there are questions, I think our briefing lays out fairly clearly that this is intended to be a specific procedural application, and that the analysis of the regulatory language first is clear on its face as to the language in D.C. 7528. And then also, to the extent that 4.344 is the general procedure for, to the extent there is a reduction, that 7528 is the specific application in the unique instance of prostate cancer, and that this specific should trump the general application. Unless the court has further questions, we can certainly rest on our briefs. Okay, thank you, Ms. Bisak. Thank you, Your Honor. Mr. Eiler? Mr. Eiler, I just have two questions. One, do you agree with Ms. Bisak as to her recitation with respect to Foster, that namely Foster is still at the Veterans Court level? It hasn't been decided yet? In other words, it hasn't come up here? Because as we know, it decided the 7528 issue but sent the residual issues back, and so it's still there somewhere, is that correct? As far as I'm aware, Your Honor, that is the case. I'm not aware that that is not the current posture in Foster, but I'm not certain. And what is your view with respect to Ms. Bisak's contention that we can't look at the question of whether the VA exceeded its authority in promulgating 1155? She says we're barred from doing that. We disagree, Your Honor. Why do you disagree? Well, we disagree because Wingard embraces only those provisions of the Secretary's, that are within the Secretary's authority to promulgate. The note here is if it's beyond that authority to promulgate, then contrary to the Secretary's position, Wingard does not apply. How about Warner? Same. Basically, Your Honor, to just briefly again address, if, as the Secretary just argued, if the protections are somehow more specific in 725 and are encompassed in the note to resolve the concern about the adequacy of examinations, it begs the questions, Your Honor, what exactly was Mr. Love supposed to do? Because that's all he did. I mean, what he did was say, I didn't get those protections that are afforded in 3.344. And he raised that to the Board. The Board didn't consider it. Veterans Court says we can't. We can't. And we would submit that the Court should find, of course, first, that the Secretary, unless the Court has any additional questions. Is he saying there was no problem with my 7528 exam as far as it went, but I should have had something more? No. He's simply saying his argument, Your Honor, was that the exam was inadequate, which the Board and the Veterans Court never even reached. That's the issue. Your Honor, if there are no further questions, we respectfully ask that this Court would reverse the Veterans Court's decision in Foster along with Mr. Love's rating on the ancillary benefit of special monthly compensation. Okay. Thank you. Thank both counsel. The case is submitted. That concludes our session for this month.